IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Lewis T. Babcock, Chief Judge

Civil Case No. 05-cv-02235-LTB-CBS

JOHN DOE (1),

Plaintiff,

v.

ARCHDIOCESE OF DENVER, and HAROLD R. WHITE,

Defendants.

_____

Civil Case No. 05-cv-02236-LTB-CBS

BRANDON TRASK,

Plaintiff,

v.

ARCHDIOCESE OF DENVER, and HAROLD R. WHITE

Defendants.

_____

Civil Case No. 05-cv-02237-LTB-CBS

ROBERT KINNEY, JR.,

Plaintiff,

v.

ARCHDIOCESE OF DENVER, and HAROLD R. WHITE,

Defendants.

_____

Civil Case No. 05-cv-02238-LTB-CBS

GERALD WOLF,

Plaintiff,

v.

ARCHDIOCESE OF DENVER, and HAROLD R. WHITE,

Defendants.

_____

Civil Case No. 05-cv-02239-LTB-CBS

TOM KOLDEWAY,

Plaintiff,

v.

ARCHDIOCESE OF DENVER, and HAROLD R. WHITE,

Defendants.

_____

Civil Case No. 05-CV-02620-LTB-CBS

JOHN DOE (1A),

Plaintiff,

v.

ARCHDIOCESE OF DENVER, and HAROLD R. WHITE,

Defendants.

_____

Civil Case No. 05-CV-02622-LTB-CBS

JOHN KOLDEWAY,

Plaintiff,

v.

ARCHDIOCESE OF DENVER, and HAROLD R. WHITE,

Defendants.

_____

Civil Case No. 06-CV-00157-LTB-CBS

RANDY BECKER,

Plaintiff,

v.

ARCHDIOCESE OF DENVER, and HAROLD R. WHITE,

Defendants.

_____

Civil Action No. 06-CV-00158-LTB-CBS

JOHN DOE (1B),

Plaintiff,

v.

ARCHDIOCESE OF DENVER, and HAROLD R. WHITE,

Defendants.

_____

Civil Case No. 06-CV-00159-LTB-CBS

JOHN DOE (1C),

Plaintiff,

v.

ARCHDIOCESE OF DENVER, and

HAROLD R. WHITE,

Defendants.

_____

Civil Case No. 06-CV-00160-LTB-CBS

JOHN DOE (1D),

Plaintiff,

v.

ARCHDIOCESE OF DENVER, and HAROLD R. WHITE,

Defendants.

_____

## MEMORANDUM OPINION AND ORDER
_____

Babcock, C.J.

These cases, removed here from Colorado courts and consolidated for the purpose of resolving the plaintiffs' motions to remand, present the narrow question whether claims arising out of neutral, state law of general applicability create a contested and substantial federal issue sufficient to establish jurisdiction pursuant to 28 U.S.C. § 1331 where, notwithstanding the existence of ecclesiastical recourse, secular norms govern the conduct of which the plaintiffs

complain.  For the reasons stated below, I find and conclude that no federal-question jurisdiction exists.  The motions for remand, fully briefed and argued orally, are GRANTED.

## I.  Allegations

The sundry complaints in these cases contain substantially similar allegations, which may briefly be summarized.  Each of the plaintiffs, while a minor and vulnerable, allegedly suffered abuse from the defendant Harold Robert White, a former priest under the supervision of and employed by the defendant Archdiocese of Denver ("Archdiocese").  The Archdiocese, purportedly aware of Father White's alleged molestation of several young boys, nevertheless gave Father White eleven assignments in different parishes throughout Colorado between 1960 and 1993.  Each plaintiff presses claims against the Archdiocese for negligence, negligent supervision, negligent retention, "vicarious liability," fraud by misrepresentation, and fraud by concealment, and against the Archdiocese and Father White for breach of fiduciary duty and civil conspiracy.

The defendants argue that the plaintiffs' claims challenge the boundary separating Church and State by engendering a legal standard for the Archdiocese's hiring, supervisory and retention practices for its clergy.  I disagree.

## II.  Discussion

The defendants, citing *Ayon v. Gourley*, 47 F. Supp. 2d 1246 (D. Colo. 1998), *aff'd*, 185 F.3d 873 (10th Cir.1999) (unpublished), argue that determination of liability in these cases would violate the First Amendment and that federal question jurisdiction therefore exists.  It is now axiomatic that jurisdiction cannot be predicated upon a defense that raises a federal question, no matter that the issue might prove to be dispositive.  *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 14, 103 S. Ct. 2841, 77 L. Ed. 2d 420 (1983).  This rule applies to

invocations of both original jurisdiction under 28 U.S.C. § 1331 and removal jurisdiction under 28

U.S.C. §§ 1441 and 1446.  *Id.* at 10 n.9.  As the Tenth Circuit has explained,

> For a case to arise under federal law, the federal question must be apparent on the face of a well-pleaded complaint, and Plaintiff's cause of action must be created by federal law or, if it is a state-law cause of action, its resolution must necessarily turn on a substantial question of federal law, and that federal law in turn must create a private cause of action.

*Rice v. Office of Servicemembers' Group Life Ins.*, 260 F.3d 1240, 1245 (10th Cir. 2001).

The claims for negligence may be considered in the aggregate.  "An employer may be

liable for harm to others for negligently employing an improper person for a task which may

involve a risk to others."  *Moses v. Diocese of Colorado*, 863 P.2d 310, 323-324 (Colo.  1993),

*cert. denied*, 511 U.S. 1137, 114 S. Ct. 2153, 128 L. Ed. 2d 880 (1994).  A claim for negligent

hiring or supervision consists of the usual elements of negligence – duty, breach, injury, causation

– and the establishment of an agency relationship between the employer and alleged employee.

*Id*. at 324.  None of these elements involves any issues of federal law.

Misrepresentation consists of 1) a false representation of a material existing fact; 2)

knowledge on the part of the one making the representation that it is false; 3) ignorance on the

part of the one to whom the representation is made of the falsity; 4) the intention that the

representation be acted upon; and 5) damage caused by the representation.  *Ballow v. Phico Ins.*

*Co.*, 875 P.2d 1354, 1361 (Colo. 1993).  A person commits fraudulent concealment when: 1) he

conceals a material existing fact that in equity and good conscience he should disclose; 2) he

knows that the fact is being concealed; 3) the relying party is ignorant of the concealment; 4) the

concealing party intends that the concealment be acted upon; and 5) action in reliance on the

concealment results in damages.  *Id*.  None of the elements of either cause of action involves a

federal issue.

"A fiduciary is a person having a duty, created by his undertaking, to act primarily for the benefit of another in matters connected with the undertaking." *Destefano v. Grabrian*, 763 P.2d 275, 284 (Colo. 1988). "A person standing in a fiduciary relationship with another is subject to liability to the other for harm resulting from a breach of the duty imposed by the relationship." *Id*. Colorado courts look to the Restatement to determine the extent of fiduciary obligations, which include a duty to exercise reasonable care and skill. *Id*.; Restatement (Second) of Trusts §§ 170, 174 (1959). This duty, sometimes viewed within the analogous context of negligence, derives from state-law principles. *See*, *e.g.*, *Command Communs., Inc. v. Fritz Cos.*, 36 P.3d 182, 188-189 (Colo. App. 2001). The claims for breach of fiduciary duty, therefore, do not arise out of or implicate federal law.

Civil conspiracy consists of five elements. The plaintiff must demonstrate that: 1) two or more persons; 2) shared an object to be accomplished; 3) reached a meeting of the minds on the object or course of action; 4) committed one or more unlawful overt acts; and 5) damages resulted proximately. *Nelson v. Elway*, 908 P.2d 102, 106 (Colo. 1995), *reh'g denied*, (1996). Neither the demonstration of the existence of any conspiracy in this case nor the proving of acts or damages resulting from it will involve issues of federal law.

Citing *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. –, 125 S. Ct. 2363, 162 L. Ed. 2d 257 (2005), the defendants correctly point out that a state law claim might present on its face a federal issue creating federal question jurisdiction. Though this straw man provides no resistance, he guards no insight. Unlike the claim pressed in *Grable*, the elements of the claims presented here are amenable to establishment without reference to questions of federal

7

law.  Whether having their origins in state or federal law, claims giving rise to subject matter jurisdiction must raise on their face a stated federal issue.  *Grable*,125 S. Ct. at 2368.

The defendants remonstrate that the First Amendment issues they intend to raise here are contested and substantial.  *Grable*,125 S. Ct. at 2367.  However, the substantiality inquiry must necessarily follow a determination that the federal issues are "essential parts of the plaintiffs' cause of action."  *Id.* at 2368-2369, *quoting Hopkins v. Walker*, 244 U.S. 486, 490, 37 S. Ct. 711, 61 L. Ed. 1270 (1917).  Thus, as the defendants concede, the Court in *Grable* did not in any way abrogate the well-pleaded complaint rule.  Indeed, the *Grable* Court expressly disclaimed any intention to contradict prior jurisdictional authority, including *Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804, 106 S. Ct. 3229, 92 L. Ed. 2d 650 (1986).  *Grable*,125 S. Ct. at 2369.  Now, as before the Court's decision in *Grable*, though a federal cause of action is not a necessary predicate for federal-question jurisdiction, a federal question apparent on the face of the well-pleaded complaint is indispensable.  *Rice*, 260 F.3d at1245.

No federal issues appear on the faces of the complaints, so I could end my analysis here. Nonetheless, I address briefly several of the defendants' creative arguments.

The defendants argue that the plaintiffs' negligence claims turn on a substantial federal question, which they find embedded in the duty element; the plaintiffs invoke the Archdiocese's special status as a religious entity presumably in order to demonstrate the defendants' heightened obligation.  However, notwithstanding certain gratuitous references in the complaints, the defendants' duty is ascertained without reference to the defendants' religious status.  An employer has a duty to exercise reasonable care in making the decision to hire.  *Moses*, 863 P.2d at 327.

Liability of the employer is predicated on the employer's antecedent ability to recognize a

potential employee's 'attribute[s] of character or prior conduct' which would create an undue risk of harm to those with whom the employee came in contact in executing his employment responsibilities. ... The scope of the employer's duty in exercising reasonable care in a hiring decision depends on the employee's anticipated degree of contact with other persons in carrying out the duties of employment.  The requisite degree of care increases, and may require expanded inquiry into the employee's background, when the employer expects the employee to have frequent contact with the public or when the nature of the employment fosters close contact and a special relationship between particular persons and the employee.

*Id*. at 327-328 (citations omitted), *quoting Connes v. Molalla Transport System, Inc.*, 831 P.2d 1316, 1321 (Colo. 1992).

Similarly, a duty breached by a fiduciary stems not from the teleological character of the fiduciary but rather from the relationship between fiduciary and principal.  For example, in *Marshall v. Grauberger*, 796 P.2d 34, 37 (Colo. Ct. App. 1990), *cert. denied*, (1990), the Colorado Court of Appeals found a fiduciary duty running from a husband to his wife not because of his status as husband but rather because he had discretionary control of his wife's assets.  As the Restatement states, "Agency is a relation based upon the manifestations of consent of the parties and hence, except where the manifestations do not have legal effect, the duties of both parties are based upon them."  Restatement (Second) of Agency § 376 cmt. a (1958).

None of these considerations is predicated upon the defendants' religious status.  Though reasonable persons expect priests not to molest children, the same expectation applies to teachers, boy scout leaders, camp counselors, and other adults.  Also, reasonable employers take reasonably prudent measures to avoid child abuse by their employees, whether the venue of employment is a church, school, or camp.  The general duty of care depends in no way upon the religious status of the defendant organizations.  Any liability will attach here as a result of the defendants' conduct *qua* employers, not *qua* religious organizations.

9

Conceding, as they must, that their religious autonomy does not alter the duty they owe in *all* cases – they offer the common "slip and fall" case as a distinguishable exemplar – the defendants nonetheless assert that this case implicates church autonomy because "Plaintiffs would have this Court pass judgment on the Archdiocese's internal relationships, communications, policies and practices." *Archdiocese of Denver's Response to Motion to Remand for Lack of Subject Matter Jurisdiction* ("*Response*"), 22 n.8.

The defendants have tendered the affidavits of Sister Mary Judith O'Brien, a licensed attorney who is trained and licensed in canon law, and Charles J. Chaput, the Archbishop of the Archdiocese of Denver.  Sister O'Brien and Archbishop Chaput affirm that the duties of priests and bishops derive from Scripture, tradition, the Magisterium, and *The Code of Canon Law*.  The Archbishop holds all legislative, executive, and judicial powers of the Archdiocese, including the authority to call, assign, and discipline priests.  The relationship between Archdiocese and priest differs from an employment relationship in that theological and ecclesiastical considerations govern its terms; canon law and Catholic Church traditions define the rights and obligations of the parties.

For these reasons, the defendants characterize the plaintiffs' claims as allegations of "professional negligence or clergy malpractice." *Response*, 25.  They argue that a fact finder cannot discern their duties without reference to ecclesiastical standards and raise the prospect of expert witnesses at trial proffering competing interpretations of canon law.  However, at least in part because of the First Amendment concerns that the defendants identify, Colorado has explicitly refused to recognize a claim for clergy malpractice.  *Destefano*, 763 P.2d at 285. Colorado courts *have* recognized distinct claims against religious authorities for negligence and

breach of fiduciary duty.  *Id*. at 284; *Moses*, 863 P.2d at 321-325.  As explained above, no issues of canon law or Church teaching are implicated in those claims, which the plaintiffs have pled here.

In fact, the "slip and fall" analogy is closer than the professional liability analogy.  A client injured by some defect in her attorney's office would not have a malpractice claim but rather a claim for simple negligence.  The attorney's status as a professional has no bearing on his general duty, owed to the public, to keep his office safe.  That the attorney also owes the client a heightened duty, not breached, to look after her legal interests is irrelevant.  By the same token, the defendants' duty, if any, arises not out of their special status as religious authorities but rather out of their decision to join the host of employers in all fields who must exercise reasonable care in their hiring and supervisory decisions.

To the extent that *Ayon* is contrary, I find it unpersuasive.  Rather, I agree with the sound reasoning of the Colorado Supreme Court, which has found no First Amendment violation where secular courts pass judgment on the question whether church authorities have legally exercised their responsibilities as employers.  *Moses*, 863 P.2d at 321; *Destefano*, 763 P.2d at 284; *Bear Valley Church of Christ v. DeBose*, 928 P.2d 1315 (Colo. 1996), *cert. denied*, 520 U.S. 1248, 117 S. Ct. 1862, 137 L. Ed. 2d 1062 (1997).  Though secular courts generally may not review internal church disputes involving matters of faith, doctrine, church governance, and polity, they may review a church's purely secular decisions, including employment decisions that depend upon other than spiritual considerations.  *Bryce v. Episcopal Church in the Diocese of Colo.*, 289 F.3d 648, 657 (10th Cir. 2002), *citing Rayburn v. General Conference of Seventh-Day Adventists*, 772 F.2d 1164, 1171 (4th Cir. 1985), *cert. denied*, 478 U.S. 1020, 106 S. Ct. 3333, 92 L. Ed. 2d 739

(1986).

For two reasons, this decision does not run afoul of the First Amendment. First, nothing here raises the specter of infringement upon the Church's free exercise of its religion. As the Supreme Court made clear in *Employment Div. v. Smith*, 494 U.S. 872, 110 S. Ct. 1595, 108 L. Ed. 2d 876 (1990), a neutral law of general applicability does not run afoul of the Free Exercise clause unless directed toward a particular religious conviction. No one would seriously contend that the conduct here complained of was "rooted in [the defendants'] religious belief." *Wisconsin v. Yoder*, 406 U.S. 205, 215, 92 S. Ct. 1526, 32 L. Ed. 2d 15 (1972).

Second, where, as here, the dispute is measured not against canon law but rather against secular legal standards, no Establishment Clause problem compels me to exercise jurisdiction. No excessive entanglement is likely because, in resolving these cases, the appropriate judicial authorities will "judge nothing to be heresy, support no dogma, and acknowledge no beliefs or practices of any sect to be the law." *Martinelli v. Bridgeport Roman Catholic Diocesan Corp.*, 196 F.3d 409, 431 (2d Cir. 1999). Further, judicial inquiry into these issues serves a secular purpose and has as its primary effect no endorsement or inhibition of religion. *See Utah Gospel Mission v. Salt Lake City Corp.*, 425 F.3d 1249, 1260 (10th Cir. 2005). These principles belie the defendants' bold contention that the plaintiffs' claims challenge the boundary that separates Church and State. That boundary lies intact some distant from the present point.

*Board of County Comm'rs v. Shroyer*, 662 F. Supp. 1542 (D. Colo. 1987) is not to the contrary. In that case, Adams County sued a citizen who had publicly questioned the legality of County expenditures. Seeking to avoid the obvious First Amendment issues, the County sought a declaratory judgment that its conduct was legal but did not seek injunctive relief against the

12

defendant.  *Id*. at 1544.  As Judge Kane pointed out, the complaint failed to present a case or controversy and amounted to a request for an advisory opinion.  *Id*. at 1544-1545.  Any justiciable claim that the complaint did present must necessarily amount to a request for judgment on the propriety of the defendant's political speech, which would require resolution of a substantial federal question.  *Id*. at 1544.  In either instance, dismissal, not removal, was demanded.

Citing *Bryce v. Episcopal Church in the Diocese of Colo.*, 121 F. Supp. 2d 1327 (D. Colo. 2000), *aff'd*, 289 F.3d 648, 655 (10th Cir.  2002), the Archdiocese argues that the merits of this case are intertwined with the First Amendment issue.  However, the claims at issue in *Bryce* had, as essential elements, rights created by Congress.  As the plaintiffs point out, that decision did not concern federal subject-matter jurisdiction over a state-law claim, much less a state-law claim that implicates no federal issues on its face, as here.

As in a labyrinth, the pursuit of a substantial federal question in these cases leads inexorably back to the beginning: no federal question appears on the faces of the plaintiffs' complaints.  Remand is therefore required.

Accordingly, it is ORDERED that

1) the plaintiffs' motions for remand are GRANTED; and

2) these cases shall be remanded to the State courts from which they were removed.

Dated: February __7__, 2006, in Denver, Colorado.

                                        BY THE COURT:


                                        ___s/Lewis T. Babcock_____

                                        Lewis T. Babcock, Chief Judge